NEW-YORK,
Oct. 1822.

The People
vs.
James Smith.

Watts, having put his name, upon the back of it at the time he received it, and the prisoner, as being the same person that passed it upon him.

*Price,* counsel for the prisoner, declined any remarks to the jury.

*Maxwell, District Attorney,* objected.

---

In the ex-amination of a prisoner, his confession ought to ap-pear in his own words; but if it ap-pear in the form of ques-tion and an-swer, it is no good ground why the ex-amination should not be read upon his trial.

The People *vs.* James Smith.    *Petit Larceny.*

*Maxwell* offered to read the examination of the prisoner, which contained a confession of the felony, and also that he had been before convicted of a petit larceny, and had just been released from prison. This information was derived from him by the committing magistrate, in the form of question and answer, upon his examination.

*Price, his •counsel,* objected, that the examination could

not be read. It contained, he said, a fact that could not
be admitted in evidence to the jury, to wit, *that he had
before been convicted of a felony :* and that it also appeared
on the face of the affidavit, that this fact had been drawn
from the prisoner by questions put to him, which he al-
leged was an unfair way to take the examination of any
prisoner.

NEW-YORK,
Oct. 1822

The People
*vs.*
James Smith.

*Maxwell* replied, that it was impossible to avoid taking
the examination in the manner alluded to, that it was
sometimes the only way that an examination could be ef-
fected : the prisoner would refuse to tell his story, and of-
ten refuse to answer any questions put to him.

*By the Court.*—"We are inclined to think the examin-
"ation may be read. It is certainly improper to intro-
"duce matter into it that is not strictly evidence. Such
"questions ought to be avoided by the magistrate, but if
"they are answered and made part of the record, we
"think it may nevertheless be read. The second objection
"that the examination is in the form of question and an-
"swer, cannot prevail. The prisoner ought to tell his
"story in his own words, and they ought to appear to be
"so in the examination. We cannot, however, decide that
"for this cause the examination is not legal evidence. Let
"the examination be read to the jury."

It was read, and the prisoner was convicted.

NOTE.—Formerly no man was compelled to accuse himself. The maxim
*nemo tenebatur prodere seipsum*, prevailed in criminal examinations
and trials without a single exception.

The statutes of 1 and 2 P. and M. c. 13, was passed, and also, 2 and 3
P. & M. c. 10, authorizing the examination of prisoners, and also of
witnesses against them. Under these statutes prisoners are exam-
ined in England for any felony committed. It was a kind of judi-
cial trial; for upon the examination of the prisoner himself, and such
witnesses as the magistrate is bound to examine, if it clearly ap-

NEW-YORK,
Oct. 1822.

The People
*vs.*
James Smith.

pears, *the crime was not committed,* or *that the prisoner did not commit it* or *that the suspicion entertained against him is groundless,* must be discharged, otherwise he is committed, or gives bail for his appearance.

The authority under which examinations are taken in New York, is to be found in the act declaring the powers and duties of justices of the peace, passed April 13, 1813. Rev. Laws, vol. 2 p. 507. This act in relation to examinations, is but a copy of the English statute. The English decisions upon this subject, are, therefore, in force here.

Under these statutes the following principles have been decided:

The prisoner, upon being brought before a magistrate, should be *immediately,* or *as soon as the nature of the case will admit,* examined and committed, bailed, or discharged. 2 Hale, 120.

Cro. Eliz.
829. 2 Hale,
120.

But the time included in the words, *"immediately,* or *as soon as the nature of the case will admit,"* is indefinite. This time seems to be extended to three days by Lords Hale and Hawkins; but it is said by Chitty, in his excellent treatise on criminal law, that the best regulated police offices allow even twenty days, from the time the prisoner is first brought before the magistrate, to his final discharge or acquittal. The practice of the police in this city is, and has been, to commit for examination and that examination has been continued from day to day to the period of three days, but has never been extended beyond it, but by absolute necessity.

The magistrate being a judicial officer, of course. must decide whether the case requires more than one examination; if not the prisoner should be immediately examined, and then immediately discharged or committed.

Moore, 402.
1 Hale 585.
2 Hale, 120.

The commitment for examination need not be by written process; a verbal authority to the constable is sufficient; nor in any subsequent examination is it necessary to use any written process to bring the prisoner before him; but after the final examination is finished, he must be formally committed by mittimus signed by the magistrate, containing the charge.

It is customary, however, in the police-officer of this city, to commit by mittimus, in the first instance; and at every subsequent examination to give a written authority to bring him up.

After the prisoner is brought before the magistrate, the greatest

should be observed, that no inducement to hope or fear be held out
to him: no promise of favor, or threats of punishment; for these
will infalliably vitiate the examination.    It may even be advisable
to caution the prisoner, that he has nothing to hope for from any con-
fession he may make: that it must be voluntary, and of his own free
will.    By such a caution some examinations, that are now rejected
in consequence of favor held out by officers who made the arrest,
and others, might be read in evidence upon the trial.

<div style="float:right;">NEW-YORK,<br>Oct. 1822.<br><br>The People<br>vs.<br>James Smith.<br><br>1 Leach,<br>263—291–386<br>2 Leach, 561.</div>

A prisoner has rights, even before an examining magistrate; and it is of
importance to him, that they are not lost at this interesting period of
the charge.    He ought to be examined to the charge against him,
and to that *only*: all extraneous facts should be avoided.    Nor should
any advantage be taken of his ignorance, to induce a confesssion
that would not be proper evidence upon his trial.    Even if the pris-
oner confess a fact not induced by questions put to him, but being
part of the regular chain of the story he tells, not relating to the
charge: for instance, a confession of a former felony, and a pardon,
it cannot be a question of doubt, if such facts ought to be part of the
record of the examination.    If it is made part of it, the prisoner is
deprived of one very important principle of criminal law.    It would
not be admitted as evidence to the jury on his trial, but being part of
the record of his examination, it is read to the jury, and the benefit
of an impartial trial lost.

<div style="float:right;">Gib. Duties<br>of Man, vol. 1.<br>p. 402.</div>

And why should the prisoner's guilt be wrung from himself?    The mag-
istrate has not only the power to examine those who brought the
prisoner before him, but he may send for others, whom the prosecu-
tor swears know any facts in relation to the charge, and may issue
his warrant for any person he believes can give testimony in favor
of the prosecution.    And here it ought not to be forgotten by the
magistrate, that the liberty of a human being, however degraded, is
important to him.    That he has the power to bring before him any
person the prisoner may wish examined in his favor.    The duty of a
magistrate in such a case need not be pointed out: he ought certain-
ly to send for them, and also examine them.

With respect to the *manner* of taking the examination, it is to be observ-
ed that the very essence of it consists in being *free* and *voluntary*,
and that the ingenious, and often complicated, questions of a man in
an official station to a prisoner, who is vibrating between hope and

NEW-YORK,
Oct. 1822.

The People
*vs.*
James Smith.

fear, whose mind is in a state of perturbation, are not calculated to obtain that object. The examination should, therefore, assume the narratative form. The prisoner should be allowed to tell his story free from any restraint, and not by subtle and intricate questions involve him in a greater crime than he was supposed to have committed. Questions, of course, may be asked, but they should be for the developement of truth, and not for the purpose of eliciting a contradiction.

The examination of witnesses for the prosecution ought always to be in the presence of the prisoner, he ought to have the benefit of a cross-examination of them; a privilege too often denied, either by negligence or ignorance. Leach's Cases, Vol. 1. p. 202—309. Ibid, vol. 2. 500—503. 5 Mod. 163—4.

The witnesses against a prisoner ought to be examined separate from each other; no opportunities of conspiracy or combination ought to be afforded them : those that have already been examined should not be allowed to mix with those that have not.

The magistrate should reduce the examination to writing, as near as possible in the words and language used by the prisoner, and nothing inserted but such facts as are necessary to prove the felony. Not only those facts which make against him, but also those in his favor, should be set down.

The authorities containing the law upon this subject may be found in 3 Inst. 79. 4 Black. Com. 359. Leach. Cas. vol. 1. 202—309. Dalt. J., c. 165. 2 Leach. Cas. 263. 1 Hale, 586. 2 Leach Cas. 310—637—552. 1 Stra. 421. 14 East, 85. 6 T. R. 530. Cro. Eliz. 820. 1 Hale, 585—6. Hawk. c. 2. c. 16 s. 12. 7 East, 533. 2 Hale, 122. City Hall Rec. vol. 1. p. 81.: vol. 2. p. 54—61.